# NO. 24-147

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

DAVID P. DEMAREST,

    *Plaintiff-Appellant*,

    v.

TOWN OF UNDERHILL, Town of Underhill, a municipality and charter town,

    *Defendants-Appellees*,
    [caption continued on second page]

On Appeal from the United States District Court
for the District of Vermont

No. 2:21-cv-00167-wks, Hon. William K. Sessions III, Judge Presiding

**BRIEF OF PLAINTIFF-APPELLANT
DAVID P. DEMAREST**

Jeremy Grant
Primmer Piper Eggleston & Cramer PC
30 Main Street, Suite 500
Burlington, VT 05401
(802) 864-0880

*Counsel for Plaintiff-Appellant
David P. Demarest*

DANIEL STEINABAUER, as an individual and in official capacity as Selectboard Chair, BOB STONE, as an individual and in official capacity, PETER DUVAL, in official capacity, DICK ALBERTINI, as an individual and in official capacity, JUDY BOND, in official capacity, PETER BROOKS, in official capacity, SETH FRIEDMAN, in official capacity, MARCY GIBSON, as an individual and in official capacity, BARBARA GREENE, in official capacity, CAROLYN GREGSON, in official capacity, STAN HAMLET, as an individual and in official capacity, RICK HEH, BRAD HOLDEN, as an individual and in official capacity, FAITH INGULSRUD, in official capacity, KURT JOHNSON, in official capacity, KAREN MCKNIGHT, as an individual and in official capacity, NANCY MCRAE, as an individual and in official capacity, MICHAEL OMAN, in official capacity, STEVE OWENS, as an individual and in official capacity, MARY PACIFICI, in official capacity, CLIFFORD PETERSON, as an individual and in official capacity, PATRICIA SABALIS, as an individual and in official capacity, CYNTHIA SEYBOLT, as an individual and in official capacity, TREVOR SQUIRRELL, as an individual and in official capacity, RITA ST. GERMAIN, as an individual and in official capacity, DAPHNE TANIS, as an individual and in official capacity, WALTER TED TEDFORD, STEVE WALKERMAN, as an individual and in official capacity, MIKE WEISEL, as an individual and in official capacity, BARBARA YERRICK, in official capacity, ANTON KELSEY, in official capacity,

*Defendants-Appellees*,

FRONT PORCH FORUM, as a Public Benefit 15 Corporation fairly treated as acting under color of law due to past and  present 16 factual considerations while serving the traditional governmental role of providing 17 "Essential Civic Infrastructure" ranging from the dii, JERICHO UNDERHILL LAND TRUST, as Non-Profit 21 Corporation fairly treated as acting under color of law due to past and present 22 factual considerations and a special  relationship willfully participating in and 23 actively directing acquisition of municipal property by the Town of Underhill,

*Defendants*.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................. iii

TABLE OF AUTHORITIES ......................................................................... iv

STATEMENT OF APPELLATE JURISDICTION ..................................... 1

ISSUES PRESENTED ON APPEAL ........................................................... 1

STANDARD OF REVIEW ........................................................................... 2

STATEMENT OF THE CASE ...................................................................... 3

    I.   Relevant Procedural Background ..................................................... 3

    II.   Factual Background ......................................................................... 5

SUMMARY OF THE ARGUMENT ............................................................ 13

ARGUMENT ................................................................................................ 17

    III.   First Amendment Claims ................................................................ 17

      A.   Standard and Legal Authority Applicable to First Amendment Retaliation Claims .. 17

      B.   Demarest's Second Amended Complaint Adequately Alleges a Plausible First Amendment Retaliation Claims ................................................................. 18

    IV.   Equal Protection Claims ................................................................. 25

      A.   Standard and Legal Authority Applicable to Demarest's Equal Protection Claims ... 25

      B.   The District Court Erred By Applying the Higher Similarity Standard for *Olech* Claims to Demarest's Equal Protection Claim and the Second Amended Complaint Sets Forth a Viable *LeClair* Claim that is Not Futile ................................................. 28

CONCLUSION .............................................................................................. 34

CERTIFICATE OF COMPLIANCE ............................................................ 35

CERTIFICATE OF SERVICE ..................................................................... 36

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007)...........................................16

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)...................38

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................38

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................. 38, 39

*Bertin v. United States*, 478 F.3d 489 (2d Cir. 2007) ..............................15

*Bizzarro v. Miranda*, 394 F.3d 82 (2d Cir. 2005)....................................31

*Bring v. Muscente*, No. 11 Civ. 4306, 2013 WL 5366371 (S.D.N.Y. Sept. 25, 2013)......................................................................................................26

*Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014)................... 33, 40

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008)................22

*Clubside, Inc. v. Valentin*, 468 F.3d 144 (2d Cir. 2006)................... 34, 39

*Cowley v. Courville*, 76 F.3d 47 (2d Cir. 1996)......................................31

*Curly v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001) .........................19

*Demarest v. Town of Underhill*, 2013 VT 72, 87 A.3d 439 ......................8

*Demarest v. Town of Underhill*, 2016 VT 10, 138 A.3d 206 .....................7

*Demarest v. Town of Underhill*, 2021 VT 14, 256 A.3d 554 .................6, 7

*Demarest v. Town of Underhill*, No. 22-956, 2022 WL 17481817 (2d Cir. Dec. 12, 2022)................................................................................. 1, 4, 5

*Dorsett v. Cnty. of Nassau*, 732 F.3d 157 (2d Cir. 2013) ................. 20,24

iv

*Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002)....................................................................................28

*Famouse Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106 (2d Cir. 2010). .............25

*Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988) ........................................................22

*Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994).............. 22, 23, 24, 26

*Gorman v. Consol. Edison Corp.*, 488 F.3d 586 (2d Cir. 2007) ...............................3

*Graham v. Long Island Rail Road*, 230 F.3d 34 (2d Cir 2000)........................ 33, 34

*Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494 (2d Cir. 2001) ...............29

*Hartman v. Moore*, 547 U.S. 250 (2006)................................................................19

*Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019) .... 30, 31, 32, 33, 34, 37, 39, 40

*Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479 (2d Cir. 2011) .......................3

*Kletschka v. Driver*, 411 F.3d 436 (2d Cir. 1969) ..................................................20

*LaVertu v. Town of Huntington*, No. 12-4378, 2014 WL 2475566 (E.D.N.Y. Apr. 4, 2014)................................................................................................................26

*LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980) ............................... 29, 30, 34, 40

*Levin v. JPMorgan Chase Bank, N.A.*, 751 Fed.App'x. 147 (2d Cir. 2018).............2

*Lozman v. City of Riviera Beach, Fla.*, 585 U.S. 87,  138 S.Ct. 1945, 201 L.Ed.2d 342 (2018)...........................................................................................................22

*Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951 (2d Cir. 2015)..........................24

*Matson v. Bd. of Educ. Of City Sch. Dist. of New York*, 631 F.3d 57 (2d Cir. 2011) ..................................................................................38

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) .......................2

*McLeod v. Jewish Guild for the Blind*, 864 F.3d 154 (2d Cir. 2017) .....................15

*Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir. 2005) .......................................... 32, 33

*Nieves v. Bartlett*, 587 U.S.139 S.Ct. 1715, 204 L.Ed. 2d  1 (2019).......................19

*Progressive Credit Union v. City of New York*, 889 F.3d 40 (2d Cir. 2018)..........31

*Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226 (E.D.N.Y. 2009) ....................27

*Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55 (2d Cir. 2010) ...........................32

*Sadallah v. City of Utica*, 383 F.3d 34 (2d Cir. 2004)...........................................20

*Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883 (1984) ....................................................21

*Tabbaa v. Chertoff*, 509 F.3d 89 (2d Cir. 2007) ...................................................26

*Tomlins v. Village of Wappinger Falls Zoning Board of Appeals*, 812 F. Supp. 2d 357 (S.D.N.Y. 2011)............................................................................................26

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam).....................30

*Zherka v. Amicone*, 634 F.3d 642 (2d Cir. 2011) ..................................................20

**Statutes**

28 U.S.C. § 1291 ...................................................................................................1

42 U.S.C. § 1983 ...................................................................................................3

**Rules**

Fed. R. Civ. P. 9(b) ..............................................................................................20

## STATEMENT OF APPELLATE JURISDICTION

This appeal arises from the United States District Court for the District of Vermont's (the "District Court"): (i) Opinion and Order entered on December 12, 2023 (the "Opinion") A-65;[1] and (ii) Judgment entered on December 12, 2023 (the "Judgment"). A-83. The Opinion and Judgment were entered by the District Court upon remand by the December 7, 2022 Opinion of the United States Court of Appeal for the Second Circuit (the "Second Circuit"), *Demarest v. Town of Underhill*, No. 22-956, 2022 WL 17481817 (2d Cir. Dec. 12, 2022), following Plaintiff-Appellant's ("Demarest" or "Appellant") interlocutory appeal commenced by Notice of Appeal dated April 27, 2022. A-15.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Demarest filed a timely Notice of Appeal on January 11, 2024 (the "Appeal"). A-84

## ISSUES PRESENTED ON APPEAL

1. Whether the District Court erred in determining that Demarest's First Amendment claims in his Second Amended Complaint were futile because the Court narrowly construed Demarest's allegations of concrete harm as limited to those involving Town Highway 26 ("TH-26"), even though the allegations of concrete

---

[1] Reference to the appendix is made using "A-" with the page number following the dash.

1

harm, when construed under the proper standard and drawing all reasonable inferences in his favor, are not limited to TH-26.

2.      Whether the District Court erred in applying the more stringent "high degree of similarity" standard to Demarest's class-of-one Equal Protection claims to deny them as futile, even though the allegations set forth in his Second Amended Complaint plausibly allege a viable *LeClair* claim, which is analyzed under the "reasonably close resemblance" standard.

## STANDARD OF REVIEW

The standard of review for all issues in this appeal is *de novo*.  Although this Court generally reviews a district court's denial of leave to amend a complaint for abuse of discretion, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), "[w]hen the denial of leave to amend is based on a legal interpretation, such as a determination that amendment would be futile, a reviewing court conducts a *de novo* review."  *Levin v. JPMorgan Chase Bank, N.A.*, 751 F.App'x. 143, 147 (2d Cir. 2018)(quoting *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011) and citing *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007)(reviewing *de novo* a district court's denial of a motion to amend as futile)).

2

## STATEMENT OF THE CASE

### I.    Relevant Procedural Background

Demarest initiated this action on June 21, 2021 by filing a Complaint *pro se,* pursuant to 42 U.S.C. § 1983, in the District Court (the "Complaint").    A-7. Demarest asserted twelve claims for constitutional violations against the Town of Underhill, Vermont (the "Town"), a group of individuals working on behalf of the Town (the "Municipal Defendants"), the Jericho Underhill Land Trust ("JULT"), and Front Porch Forum, an online forum. *Id.*; *Demarest v. Town of Underhill*, 2022 WL 17481817, at *1 (2d Cir. Dec. 7, 2022).

On July 13, 2021, the Municipal Defendants and the Town filed a Motion to Dismiss Complaint on the grounds that Demarest's Complaint did not comply with the Federal Rules of Civil Procedure.    A-8.    On August 2, 2021, Demarest filed a Response in Opposition to the Municipal Defendants and Town's Motion to Dismiss Complaint, together with an Amended Complaint (the "Amended Complaint"). A-10.    On August 23, 2021, the Municipal Defendants and the Town filed a Motion to Dismiss Amended Complaint on the grounds that the claims were barred by the statute of limitations or claim preclusion.    A-11.    After the parties submitted an opposition and a reply, on March 29, 2022, the District Court issued an Opinion and Order, dismissing Plaintiff's Amended Complaint and inviting Demarest to file a

motion for leave to amend, together with a proposed Second Amended Complaint, on or before April 29, 2022. A-12.

Demarest filed an interlocutory Notice of Appeal on April 27, 2022, appealing the District Court's Opinion and Order dated March 29, 2022. A-15. Demarest limited his interlocutory appeal to the Municipal Defendants and the Town; he also stipulated to the dismissal of two of his claims against JULT and Front Porch Forum. *See Demarest*, 2022 WL 17481817, at *1 n.3. On December 7, 2022, this Court issued a Summary Order, affirming the District Court's Order and Opinion dated March 29, 2022 and concluding that the claims in the Amended Complaint were "barred by claim preclusion and the running of the statute of limitations, or otherwise failed to state a valid claim." *Id.*

On February 14, 2023, this Court's Mandate/Summary Order dated December 7, 2022 was entered on the docket for the District Court. A-13. Demarest filed a Motion for Leave to File Second Amended Complaint, A-16, together with a proposed Second Amended Complaint, both dated October 2, 2023. A-18. On October 11, 2023, the Town and Municipal Defendants filed an opposition to Demarest's Motion for Leave to File Second Amended Complaint and Demarest filed his reply on October 25, 2023. A-13.

On December 12, 2023, Judge William K. Sessions III entered on the docket the Opinion denying Demarest's Motion for Leave to File Second Amended Complaint, A-82, as well as the Judgment, closing the case. A-82; A-83.

Demarest retained counsel and filed a timely Notice of Appeal on January 11, 2024, appealing the Opinion and Judgment to the Second Circuit. A-84.

## II. Factual Background

This matter has a lengthy history, much of which is not directly relevant to the claims set forth in the Amended Complaint. Accordingly, Demarest briefly summarizes the relevant factual background because it is necessary for a complete understanding of the relationship the Municipal Defendants and Town have with Demarest.[2]

In 2002, Demarest purchased a 51.3-acre parcel of land in the Town adjacent to Town Highway 26 ("TH-26"), A-66, which the Town designated as parcel NR144. A-18. In 2001, the Town reclassified portions of TH-26 as a legal trail and stopped maintaining the roadway at that time. A-66 (citing *Demarest v. Town of Underhill*, 2021 VT 14, ¶¶ 2-7, 256 A.3d 554). After a lawsuit was filed challenging the sufficiency of the 2001 reclassification, which Demarest participated in, the Town commenced proceedings to reclassify TH-26. *Id.* The Town Selectboard

---

[2] A more complete and detailed factual background is set forth in the District Court's Order. *See* A-66 through A-68.

5

issued a decision approving the reclassification in June 2010, resulting in TH-26 being divided into three segments: (1) New Road, a class 3 town highway; (2) Fuller Road, a class 4 town highway, and (3) Crane Brook Trail, a legal trail connecting New Road and Fuller Road. *Id.* At the time Demarest purchased his property in 2002, it was possible to operate a "standard two-wheel drive car to drive the vast majority of TH-26" and "the entire road was easily driven in a standard pickup truck all the way from Pleasant Valley Road to Irish Settlement Road." A-44.

After the Town reclassified TH-26, Demarest's highway access was limited to Fuller Road. *Id.* However, if Demarest could use the Crane Brook Trail to access New Road, he would have a more direct route to the Town. *Id.*

As a result of the Town's 2010 reclassification decision, Demarest filed several lawsuits against the Town in state court. *See Demarest v. Town of Underhill*, 2021 VT 14 (affirming trial court's decision on summary judgment that Demarest's request for a declaration that he had a right of vehicle access over Crane Brook Trail was barred by claim preclusion and that the Selectboard acted within its discretion when it denied Demarest's request for a permit for highway access to a proposed new subdivision of his property); *Demarest v. Town of Underhill*, 2016 VT 10, 138 A.3d 206 (reversing trial court order that affirmed County Road Commissioner decision requiring the Town to maintain Fuller Road because the Town had discretion in determining whether to maintain and repair a Class 4 road); *Demarest*

6

*v. Town of Underhill*, 2013 VT 72, 87 A.3d 439 (holding that the Selectboard's reclassification decision regarding TH-26 was supported by the evidence).

In his Second Amended Complaint, Demarest alleges the Town and Municipal Defendants retaliated against him for both his "efforts to compel the promised access to his home and surrounding land" in the state court litigation referenced above and his "outspoken criticism of Defendants' acts with respect to TH-26." A-19; A-58 (explaining that Municipal Defendants "Steve Walkerman, Dan Steinbauer, and Steve Owens unanimously retaliated against Plaintiff for exercising the right to file a lawsuit and filing the 2010 Petition on Fairness in Town Road Maintenance."). Demarest further alleges that he has been singled out for harsh treatment, while other similarly situated property owners, including some of the Municipal Defendants, have been treated much differently. A-20; *see also* A-30 (explaining that the Town "willfully treats Plaintiff and the vast majority of Plaintiff's previously clearly recognized bundle of private property rights differently than similarly situated property owners.").

For example, Demarest contends that on May 8, 2023, Municipal Defendants attending a "joint meeting of the Underhill Conservation Commission and Underhill Recreation Committee" developed a plan to "build[] gates to block [Demarest's] continued vehicular access" over Crane Brook Trail, preventing Demarest from accessing his domicile and surrounding lands. A-24. Demarest further asserts that

on November 13, 2019, the Town placed boulders "in the way of Plaintiff's right of way" which he had to move "out of the way with his tractor." A-45.

Similarly, Demarest alleges that the Town Selectboard denied his preliminary access permit to a proposed nine-lot subdivision, while it granted "other similarly situated (but less thoroughly prepared) *preliminary* access permit applications" submitted by Municipal Defendants Dick Albertini and Marcy Gibson, affording them an opportunity to present their proposals to the Development Review Board, and resulting in them receiving "lucrative subdivisions." A-31.

Since 2009, Demarest has been urging the Town to apply for a grant to replace a failed culvert on the section of TH-26 abutting his property. A-24. Yet, the Town installed a "Beaver Deceiver" for "similarly situated landowners abutting Corbett Road" to preserve vehicle traffic while protecting the environment. A-37. The Town refuses to fix the failed culvert on the central section of TH-26, even though it has created both access problems and environmental problems. *Id.* Demarest further points to (i) the Town maintaining "TH-9 (North Underhill Station Road," even though it runs through a wetland, "providing [a] requested culvert to" the Class IV portion of TH-11 (Butler Road), (ii) discontinuing "segments of TH-11 (Butler Road), TH-33 and TH-41" instead of discretionarily turning the segments into a legal trail, and (iii) upgrading "a segment of TH-26 . . . from Class 4 to Class 3." A-37; A-43. Indeed, while the Town continues to refuse to fix the failed culvert on TH-

8

26, it has applied for grants to improve the "intersection of New Road and Pleasant Valley Road to support the desired purchase of [Municipal] Defendant Dick Albertini's property for a gravel pit." A-40. When the Class IV Road Committee finally agreed to schedule a visit to look into the "failed culverts on TH-26 north of Plaintiff's driveway," they scheduled the visit "for the same day Plaintiff was known to be making oral arguments before the Second Circuit Court in New York City." A-49. Demarest alleges that the Town replaced "similarly situated culverts when they benefit residents other than Plaintiff." A-50. In fact, Demarest alleges that the Town will not even permit him to maintain the central segment of TH-26 at his own expense, even though he raised the issue in meetings on September 14, 2020 and May 10, 2021. A-55.

Demarest compares himself to other "similarly situated private properties on other Class III or Class IV road (or properly managed trails)" based on the Town's refusal "to help mitigate the increased number of issues with: the public nuisance of having vehicles parked on Plaintiff's property or in the way of Plaintiff's property access, the public nuisance of litter and illegal dumping, criminal trespass, crimes of vandalism, the theft of thousands of dollars of Plaintiff's personal property, and Plaintiff has even been shot at once while on his private property." A-46. Demarest further alleges that the Town "has willfully and wantonly continued to refuse to provide **any** maintenance to any portion of Plaintiff's limited remaining Class IV

9

Road frontage," while maintaining other Class IV roads for similarly situated landowners. A-48; A-49. In fact, Municipal Defendant Rick Heh created a matrix of Class IV Road characteristics in June of 2019 in an effort to justify maintenance expenses of Class IV roads and, even though Demarest identified factual errors in the matrix, the errors were never corrected. A-49.

Demarest also attached the Affidavit of Jeff Sprout to his Second Amended Complaint, who was employed as a Road Foreman for the Town's Highway Department from 1997 until 2007. A-28; A-64. In his Affidavit, Mr. Sprout explains that during his employment with the Town as a Road Foreman, he "was never made aware of any compelling justification for the Town [] to stop maintaining any segment of TH26" and he did not agree with the "Selectboard decision to no longer allow the [Highway] Department to conduct reasonable and necessary maintenance to the central segment of TH26" because the Town garage was located on New Road, making "the entire length of TH26 very reasonable to maintain." A-64. In fact, Mr. Sprout explains that "[m]aintaining the northern segment of TH26 could have also benefited the Town [] by providing a much shorter route for town trucks maintaining Irish Settlement Road." *Id.*

Demarest, in his Second Amended Complaint, further alleges that Town "appraisals of properties on and near TH-26 demonstrate the disproportionate negative financial impact" of the Town and Municipal Defendants' unequal

10

treatment of "TH-26 and Plaintiff's property compared to nearby real estate values." A-38. Indeed, Demarest alleges that Municipal Defendants Dick Albertini and Marcy Gibson's property values increased and they profited from "a completed subdivision process which was dramatically easier [for them] than the Town of Underhill's unequal treatment of Plaintiff's efforts to obtain a *preliminary* access permit." A-38; A-57. Demarest alleges that the appraised values of the following, similarly situated, Municipal Defendants' properties: Daphne Tanis, the Town, Marcy Gibson, Anton Kelsey, Seth Friedman, and Dick Albertini, are much higher than the appraised value of his property, demonstrating that the only reason for the difference is due to the Town and Municipal Defendants' disparate treatment of him. A-38; A-39.

Demarest points to a Conflict of Interest Complaint he submitted against Municipal Defendant Dan Steinbauer on October 8, 2020 as yet another example of how he was treated "dramatically differently" than similarly situated town residents. A-42. The Selectboard simply disregarded the allegations in Demarest's Conflict of Interest Complaint, *Id.*, even though it was "properly filed with the support of over 5% of Underhill's voters on November 30, 2020." A-56. In contrast, when Jim Beebe-Woodard submitted a Conflict of Interest Complaint against Peter Duval, it resulted in "a quasi-judicial hearing on September 21, 2020." *Id.*

11

At the same time that the Town is treating Demarest differently from other similarly situated Municipal Defendants, the Town is "engaging in an ongoing pattern of censorship and misrepresentation of the public record," A-40, by "the selective removal of public records, *which were previously readily available on the Town of Underhill official website*" and preparing "intentionally vague or misrepresentative meeting minutes." A-41. Demarest alleges that the Town's censorship and selective removal of public records is due "to the public nature of litigation" he brought against the Town. A-41.

For example, Demarest alleges that the Town Selectboard excluded his comments from the meeting minutes from a September 21, 2020 meeting based "upon a desire to prevent factually and politically important details being publicly readily available." A-50. While the Town posted Jim Beebe Woodard's Conflict of Interest Complaint against Peter Duval on the Town's website to be available for public review, it continues to refuse to publicly post or even read Demarest's similar Conflict of Interest Complaint against Municipal Defendant Dan Steinbauer. A-50.

Accordingly, the claims set forth in Demarest's Second Amended Complaint arise out of the Town and Municipal Defendants' pattern of unequal treatment of Demarest compared to similarly situated residents and their retaliation against Demarest for exercising his First Amendment Rights by filing lawsuits against the

Town and publicly advocating for the Town to maintain TH-26 and replace culverts on TH-26, like it does for other Class IV roads in the Town.

## SUMMARY OF THE ARGUMENT

The crux of Demarest's argument on appeal is that the District Court erred in assuming that the First Amendment retaliation and Equal Protection claims set forth in Demarest's Second Amended Complaint "arise out of the reclassification of a portion of [TH-26] to trail status." A-65. Instead, Demarest's First Amendment retaliation and Equal Protection claims arise out of the Municipal Defendants and Town's negative and retaliatory treatment of him from the time TH-26 was reclassified until the present. The Second Amended Complaint contains allegations relating to the 2010 reclassification of TH-26 because those allegations are essential to understand why the Municipal Defendants and Town have treated and continue to treat Demarest like a pariah, just because he exercised his First Amendment rights. Accordingly, while the claims set forth in the Second Amended Complaint provide context for the Municipal Defendants and Town's wrongful acts, Demarest is seeking redress for how the Municipal Defendants and Town are currently treating him, not how they treated him ten years ago when TH-26 was reclassified.

The District Court erred in its Opinion because it narrowly construed the claims set forth in Demarest's Second Amended Complaint. The District Court drew no reasonable inferences in his favor when evaluating whether the First Amendment

retaliation and Equal Protection claims were futile. Moreover, even though Demarest was a pro se litigant at that point, the District Court did not liberally construe his Second Amended Complaint. This Court has "repeatedly stated, '[w]e liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest.'" *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)). "The policy of liberally construing pro se submissions is driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* at 156–57 (quoting *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007)). To be clear, the District Court has gone out of its way to protect Demarest against inadvertent forfeiture of important rights. However, in construing Demarest's Second Amended Complaint, the District Court narrowly construed Demarest's allegations, focusing on those from the time of the reclassification of TH-26, more than ten years ago. However, the Second Amended Complaint also contains more recent allegations, which when accepted as true and drawing all reasonable inferences from those allegations in Demarest's favor, state viable First Amendment retaliation and Equal Protection claims that would survive a motion to dismiss.

With regard to Demarest's First Amendment retaliation claims, the District Court erred by concluding that the concrete harm at issue was limited to those associated with TH-26 and finding that "it is now well established that a claim arising from the Town's reclassification of TH 26 is barred as claim precluded, untimely, or both." A-75. First, the allegations set forth in the Second Amended Complaint are not limited to harm caused by the reclassification of TH-26. For example, Demarest has also alleged harm caused by: (i) the Town's refusal to provide any maintenance to Demarest's Class IV road frontage, while maintaining other Class IV roads for similarly situated landowners; (ii) the Selectboard's disregard of Demarest's Conflict of Interest Complaint, not even making it public, while at the same time promptly acting on a Conflict of Interest Complaint filed by a similarly situated individual whose Complaint was made available to the public; and, (iii) the Town and Municipal Defendants' acts that have caused injury to the value of his property.

In addition, the District Court failed to acknowledge case law that has found a wide variety of concrete harms can be sufficient to support a claim in the absence of actual chilling of free speech. Demarest's injuries and the concrete harm he suffered and continues to suffer are similar in severity and scope to those injuries and harms courts have deemed sufficient to survive a motion to dismiss. Moreover, this Court has explained that whether a plaintiff suffered a concrete harm is an issue

of fact that cannot properly be resolved on a motion to dismiss. As a result, the District Court erred in concluding that Demarest's First Amendment retaliation claims in his Second Amended Complaint were futile.

The District Court also erred when it concluded that the Equal Protection claims set forth in Demarest's Second Amended Complaint were futile. The District Court narrowly construed Demarest's allegations as only asserting one type of Equal Protection claim – the type requiring a plaintiff to establish a very stringent similarity standard that is nearly impossible to achieve without discovery. However, as set forth below, when properly construed, Demarest's Second Amended Complaint asserts a different type of Equal Protection claim – one that has a more relaxed similarity standard. Fairly construed, Demarest's Second Amended Complaint asserts a plausible Equal Protection claim and contains sufficient factual content for this Court to draw reasonable inferences that the Town and Municipal Defendants are liable for the misconduct alleged. As a result, this Court should reverse the District Court's Opinion finding that Demarest's Equal Protection claims set forth in the Second Amended Complaint are futile. Instead, Demarest's Equal Protection claims are viable and should proceed to discovery.

16

## ARGUMENT

### III.   First Amendment Claims

#### A. Standard and Legal Authority Applicable to First Amendment Retaliation Claims

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. ---, ---, 139 S.Ct. 1715, 1722, 204 L.Ed. 2d 1 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L.Ed.2d 441 (2006)).

To establish a First Amendment retaliation claim, Demarest must establish that: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment Right." *Curly v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). Although private citizens alleging retaliation for criticism of public officials generally must establish their First Amendment rights were actually chilled, "in limited contexts, other forms of harm have been accepted in place of this 'actual chilling' requirement." *Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011) (citations omitted); *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) ("Chilled Speech is not the *sine qua non* of a First Amendment claim. A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has

17

suffered some other concrete harm. Various non-speech related harms are sufficient to give a plaintiff standing.") (emphasis in original and collecting cases).

Section 1983 claims are intended to "provide a remedy when federal rights have been violated through the use of misuse of power derived from a state." *Kletschka v. Driver*, 411 F.3d 436, 448-49 (2d Cir. 1969). Accordingly, this Court has explained that the "requirement that plaintiffs allege 'actual chilling' ensures an identified injury to one's right to free speech is established. Hurt feelings or a bruised ego are not by themselves the stuff of constitutional tort." *Zherka*, 634 F.3d at 645-46 (citing *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (requiring a "state-imposed burden or alteration of status. . . *in addition* to [a] stigmatizing statement") (emphasis in original)).

### B. Demarest's Second Amended Complaint Adequately Alleges a Plausible First Amendment Retaliation Claims

Demarest's Second Amended Complaint sets forth plausible allegations, which this Court must accept as true, to support his claim for First Amendment retaliation against the Town and Municipal Defendants.

Demarest has sufficiently alleged the first element to establish a claim for First Amendment retaliation because he has filed several lawsuits against the Town in State Court. Indeed, Demarest alleges that the Town and Municipal Defendants singled him out for different treatment not only for filing lawsuits against the Town, but also for publicly advocating for the Town to maintain and repair the Class IV

18

section of TH-26 and for his "outspoken criticism of Defendants' acts with respect to TH-26." A-19; A-58. In addition, Demarest further alleges that he submitted a Conflict of Interest Complaint against Municipal Defendant Dan Steinbauer on October 8, 2020, which was "properly filed with the support of over 5% of Underhill's voters on November 30, 2020." A-42; A-56.

The United States has held that "the right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 896-97, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984); *Lozman v. City of Riviera Beach, Fla.*, 585 U.S. 87, 101, 138 S.Ct. 1945, 1954, 201 L.Ed.2d 342 (2018) (explaining that the right to petition the government for a redress of grievances is "one of the most precious of the liberties safeguarded by the Bill of Rights," and is "high in the hierarchy of First Amendment Values.") (citations and internal quotation marks omitted). Indeed, this Court has long held that "[t]he rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008).

Demarest's Second Amended Complaint also adequately pleaded that the Town and Municipal Defendant's retaliatory conduct was motivated by Demarest's exercise of his First Amendment rights. For example, Demarest alleges that the

Municipal Defendants "Steve Walkerman, Dan Steinbauer, and Steve Owens unanimously retaliated against Plaintiff for exercising the right to file a lawsuit and filing the 2010 Petition on Fairness in Town Road Maintenance." A-58. Demarest also alleges that the Town placed boulders in his "right of way" on November 13, 2019 that he had to move. A-45. While not expressly stated, construed liberally in the context of Plaintiff's Second Amended Complaint, Demarest is alleging that the Town did so based on exercise of First Amendment rights. Similarly, Demarest alleges that the Town continues to refuse to fix a failed culvert on TH-26, despite his repeated requests, yet has replaced "similarly situated culverts when they benefit residents other than [him]." A-40; A-50. Again, while not clearly alleged, this allegation gives rise to the inference that the Town is not fixing the failed culvert on TH-26 in response to Demarest's exercise of his First Amendment rights by filing lawsuits against the Town.

This Court has cautioned that "[t]he ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint." *Gagliardi*, 18 F.3d at 195 (citations omitted). Indeed, Rule 9(b) of the Federal Rules of Civil Procedure expressly provides that "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). According, in *Gagliardi*, this Court explained that "[w]hile a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a

20

motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants may be inferred." *Gagliardi*, 18 F.3d at 195 (citations omitted). In *Gagliardi*, this Court held that the plaintiffs' allegation that the defendants "undertook a purposeful aggravated and persistent course of conspiratorial noncompliance and nonenforcement of the pertinent municipal, zoning, noise and safety ordinances, rules, regulations and laws" in response to the plaintiffs' efforts to remedy a zoning violation." *Id.*

With regard to the final element of his First Amendment retaliation claim, Demarest's Second Amended Complaint sufficiently alleges that he "suffered some other concrete harm" due to the Town and Municipal Defendants' retaliation. *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 956 (2d Cir. 2015) (quoting *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)). The District Court erred when it determined that Demarest's "concrete harm involves TH 26, and it is not well established that a claim arising from the Town's reclassification of TH 26 is barred as claim precluded, untimely, or both." A-75. The District Court's conclusion rests on an overly narrow construction of the allegations set forth in the Second Amended Complaint and a fixation on construing Demarest's claims as only arising out of the 2010 reclassification of TH 26.

However, at this stage in the litigation, the allegations set forth in the Second Amended Complaint must be construed as true and all reasonable inferences should

21

be drawn in Demarest's favor. *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010). Under the proper standard of review, Demarest's Second Amended Complaint sufficiently alleges that he suffered a concrete harm. For instance, Demarest alleged that the Town "willfully and wantonly continued to refuse to provide **any** maintenance to any portion of [his] limited remaining Class IV Road frontage," while at the same time maintaining other Class IV roads for similarly situated landowners. A-48; A-49 (emphasis in original). When Municipal Defendant Rick Heh created a matrix to lay out the justification for maintenance expenses of Class IV roads, Demarest pointed factual errors that were not corrected. A-49. Demarest also suffered concrete harm when the Selectboard disregarded his Conflict of Interest Complaint against Municipal Defendant Dan Steinbauer, even though it was properly filed "with the support of over 5% of Underhill's voters." A-42; A-56.

Courts have held that "[i]n private citizen cases, 'various forms of concrete harm have been substituted for the actual chilling requirement.'" *LaVertu v. Town of Huntington*, No. 12-4378, 2014 WL 2475566, at *6 (E.D.N.Y. Apr. 4, 2014) (quoting *Bring v. Muscente*, No. 11 Civ. 4306, 2013 WL 5366371, at *7 (S.D.N.Y. Sept. 25, 2013)); *Tabbaa v. Chertoff*, 509 F.3d 89, 102 (2d Cir. 2007) (concluding additional scrutiny at border crossing was a sufficient harm). For example, in *Gagliardi*, this Court found a concrete harm sufficient to establish the third element

of a First Amendment retaliation claim because the plaintiffs pleaded non-speech injuries, such as noise pollution, and that the defendants misapplied the zoning code in retaliation for the plaintiffs' exercise of their free speech rights. 18 F.3d at 190; *Tomlins v. Village of Wappinger Falls Zoning Board of Appeals*, 812 F.Supp.2d 357, 371 n. 17 (S.D.N.Y. 2011) (establishing concrete harm based on allegation of retaliatory denial of a building permit and a denial of an unconditional variance); *Puckett v. City of Glen Cove*, 631 F.Supp.2d 226, 239 (E.D.N.Y. 2009) (finding plaintiff adequately alleged concrete harm based on the harm to value of her property as a result of defendants' retaliatory conduct).

Like the *Gagliardi* plaintiffs, here, Demarest has also alleged that the Municipal Defendants and Town's retaliatory acts have caused "the public nuisance of having vehicles parked on [his] property or in the way of [his] property access," litter and illegal dumping, "criminal trespass, crimes of vandalism" and the "theft of thousands of dollars of [Demarest's] personal property." A-46. In addition, like the plaintiff in *Puckett*, who sufficiently alleged a concrete injury to survive a motion to dismiss based on her alleged "injury to the value of her property," here, Demarest sufficiently alleged the Town and Municipal Defendants' retaliatory conduct injured the value of his property. Indeed, Demarest alleges that the Town's "appraisals of properties on and near TH-26 demonstrate the disproportionate negative financial impact of the Unequal Treatment of TH-26 and [his] property compared to nearby

real estate values and the indefinite delay of reasonable investment backed returns or appreciation in comparison to nearby similarly situated properties." A-38.

Similarly, this Court has held that whether the plaintiff suffered a concrete harm is an "issue of fact that cannot properly be determined on a motion to dismiss." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 92 (2d Cir. 2002) (reversing the district court's denial of plaintiff's motion for leave to amend the complaint to include a First Amendment claim of retaliation). In *Dougherty*, the plaintiff survived a motion to dismiss when he not only relied on "the alleged close timing and relationship between his service of opposition papers and the Board's revocation of his permit. He also allege[d] that the entire chronology of events spanning a period of over five years displays a general pattern of egregious treatment by the Board." *Id.* Here, the result should be no different. Demarest does not only rely on the temporal proximity between his exercise of First Amendment rights and the Town and Municipal Defendants' retaliatory acts. Like the plaintiff in *Dougherty*, Demarest also sets forth an entire chronology of events spanning a period of over a decade displaying a general pattern of egregious treatment by the Town and Municipal Defendants.

Accordingly, for the reasons set forth above, this Court should reverse the District Court conclusion that the First Amendment retaliation claims set forth in Demarest's Second Amended Complaint are futile. When viewed under the proper

24

standard, Demarest sufficiently alleged plausible First Amendment retaliation claims against the Town and Municipal Defendants.

## IV. Equal Protection Claims

### A. Standard and Legal Authority Applicable to Demarest's Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Typically, the Equal Protection Clause is used by plaintiffs asserting discrimination claims based upon their membership in a protected class. *Id.* (citing *LeClair v. Saunders*, 627 F.2d 606, 608-10 (2d Cir. 1980)). However, a plaintiff can also assert a claim under the Equal Protection Clause as a "class of one," without alleging membership in any protected class, when the plaintiff is subjected to "invidious discrimination at the hands of government officials." *Id.* The United States Supreme Court confirmed the validity of "class of one" equal protection claims. In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam) (explaining that a "class of one" equal protection claim may be brought "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

In this circuit, a plaintiff can assert a "class of one" equal protection claim under two distinct theories: (1) *LeClair* claims and (2) *Olech* claims. *Hu v. City of*

*New York*, 927 F.3d 81, 93 (2d Cir. 2019) (holding "that these two decisions offer distinct pathways for proving a non-class-based Equal Protection violation.").

To establish a *LeClair* claim, a plaintiff must show that "(1) the [plaintiff] compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as. . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair*, 627 F.2d at 609–10 (citation omitted). In *Hu*, this Court further explained that a *LeClair* equal protection claim:

> "requires proof of disparate treatment and impermissible motivation." *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005). A plaintiff cannot merely rest on "a demonstration of different treatment from persons similarly situated[.]" *Id.* (quoting *Cowley v. Courville*, 76 F.3d 47, 53 (2d Cir. 1996)(internal quotation marks and alterations omitted). Instead, he must "prove that the disparate treatment was *caused by* the impermissible motivation." *Id.*

927 F.3d at 91 (emphasis in original). Accordingly, a *LeClair* claim "protects against both discrimination on the basis of a plaintiff's protected status (e.g., race or a constitutionally-protected activity) and discrimination on the basis of a defendant's personal malice or ill will towards a plaintiff." *Id.*

In contrast, to establish an *Olech* claim, a plaintiff must show that: "(i) no rational person could regard the circumstances of plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a

26

legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of mistake." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (quoting *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010)). An *Olech* claim requires "the existence of highly similar circumstances" which "provides the basis for 'infer[ing] that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain.'" *Hu*, 927 F.3d at 92 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Prior to this Court's decision in *Hu*, "the precise relationship between" *Olech* claims and *LeClair* claims had "become a source of some confusion in this circuit." *Id.* (citations omitted). In *Hu*, this Court clarified the relationship and resolved the uncertainty by explaining that:

> [w]hile both types of Equal Protection claims require a showing that the plaintiff was treated differently from another similarly situated comparator, they differ in at least two key respects. First, unlike a malice-based *LeClair* claim, an *Olech* claim does not require proof of a defendant's subjective ill will towards a plaintiff. Instead, a plaintiff can prevail on an *Olech* claim on the basis of similarity alone. However, the similarity standard for an *Olech* claim is more stringent than the standard for a *LeClair* claim. While *Olech* requires an "extremely high" degree of similarity between a plaintiff and comparator, *LeClair* merely requires a "reasonably close resemblance" between a plaintiff's and comparator's circumstances.

27

*Id.* at 93. In other words, to prevail on a *LeClair*, a plaintiff "must prove both that he was treated differently from another similarly situated, and that the differential treatment was motivated by the plaintiff's membership in a protected class," whereas with an *Olech* claim "the disparate treatment and impermissible motive inquiries are 'virtually one and the same.'" *Id.* at 94 (quoting *Neilson*, 409 F.3d at 105).

This Court also resolved whether "*Olech* and *LeClair* require the same degree of similarity between a plaintiff and her proffered comparator." *Hu*, 927 F.3d at 95. For a *LeClair* claim, this Court adopted "the similarity standard. . . articulated in *Graham v. Long Island Rail Road*, 230 F.3d 34 (2d Cir 2000)" and explained that:

> [t]o satisfy this standard, "the plaintiff's and comparator's circumstances must bear a reasonably close resemblance." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)(internal quotation marks omitted). They need not, however, be "identical." *Id.* A plaintiff can prevail by showing that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Graham*, 230 F.3d at 39 (internal quotations marks omitted).

*Id.* at 96.

### B. The District Court Erred By Applying the Higher Similarity Standard for *Olech* Claims to Demarest's Equal Protection Claim and the Second Amended Complaint Sets Forth a Viable *LeClair* Claim that is Not Futile

In its Opinion, the District Court erred by applying the rigorous similarity standard applicable to *Olech* Equal Protection claims and not considering whether

Demarest's Second Amended Complaint could be construed as asserting a *LeClair* Equal Protection Claim. *See* A-77. Indeed the District Court "reviewed the allegations set forth in the proposed Second Amended Complaint and f[ound] none that meet the 'high degree of similarity' standard required for a class-of-one equal protection claim.'" A-79 (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). Demarest's Second Amended Complaint, however, sets forth sufficient allegations to establish a prima facie *LeClair* Equal Protection claim.

Here, Demarest has established the first element of a *LeClair* claim because he has established that "compared with others similarly situated, [he] was selectively treated." *LeClair*, 627 F.2d at 609-10. For example, Demarest identifies Defendant Dick Albertini as a comparator whose circumstances bear a reasonably close resemblance to his in several regards. Demarest alleges that Municipal Defendant Dick Albertini owned property off of the intersection of New Road and Pleasant Valley Road, near his property. A-40. Demarest further alleges that the Town has continuously refused to apply for a grant to fix broken culverts near his property on TH-26. A-37. However, the Town did apply for a grant to improve the "intersection of New Road and Pleasant Valley Road to support the desired purchase of [Municipal] Defendant Dick Albertini's property for a gravel pit." A-40; A-87.

In addition, both Demarest and Municipal Defendant Dick Albertini applied for preliminary access application for a subdivision. Demarest alleges that the Town

Selectboard denied his preliminary access permit to a proposed nine-lot subdivision, yet it granted Municipal Defendant Dick Albertini an opportunity to present his proposal to the Development Review Board, even though his preliminary access permit application was not as thoroughly prepared as Demarest's application. A-31. This resulted in Municipal Defendant Dick Albertini receiving "lucrative subdivisions." *Id.*; A-84.

In his Second Amended Complaint, Demarest identifies Municipal Defendant Marcy Gibson as another comparator who received preferential treatment. Municipal Defendant Marcy Gibson lives on 50 New Road, a Class III road that was formerly known as TH-26. A-21; A-66. Demarest has repeatedly requested that the Town maintain and repair the Class IV segment of TH-26, now known as Fuller Road, because it is the only highway access to his property and the Town has repeatedly refused to do so. A-48; A-49; A-66. In contrast, Demarest alleges that Municipal Defendant Marcy Gibson directed the Town Road Crew to develop a school bus turnaround on the Town's conservation land opposite her property for the sole benefit of her grandchildren and the value of her property, which cost the Town an estimated $3,875. A-23. Moreover, like Municipal Defendant Dick Albertini, Municipal Defendant Marcy Gibson submitted a "similarly situated (but less thoroughly prepared) *preliminary* access permit application[]" and was granted the opportunity to present her proposal to the Development Review Board. A-31. In

contrast, Defendant's more thoroughly prepared preliminary access permit application was summarily denied. *Id.*; A-84. As a result, Municipal Defendant Marcy Gibson's property at the Class III end of TH-26 is worth more than Demarest's property, even though it is one-fifth the size. A-39. In addition, Demarest further alleges that after the middle section of TH-26 was turned into a legal trail, the Recreation Committee "didn't think it was right to have parking so close to Marcy's house." A-51. In contrast, the Town has been unresponsive to Demarest's requests that the Town prevent the public from parking on his driveway, property or on TH-26, blocking his access to his property. A-49.

Demarest identifies yet another comparator in his Second Amended Complaint, Jim Beebe-Woodard. A-50. Both Jim Beebe Woodard and Demarest submitted Conflict of Interest Complaints to the Selectboard. A-42. Plaintiff submitted a Conflict of Interest Complaint against Municipal Defendant Dan Steinbauer and "was treated dramatically differently (by simply disregarding the allegations) than the Conflict of Interest Complaint submitted by Jim Beebbe-Woodard against [Municipal Defendant] Peter Duval which resulted in [] a quasi-judicial hearing on September 21, 2020" and the expense of changing the Town Charter." *Id.* Jim Beebe Woodard was the Town Administrator at the time he submitted his Conflict of Interest Complaint and the Town posted his complaint against Municipal Defendant Peter Duval on its website. A-50. In contrast, the

31

Town has refused to make Demarest's Conflict of Interest Complaint against Dan Steinbauer available on its Website, (A-50), even though it was "properly filed with the support of over 5% of Underhill's voters on November 30, 2020." A-56.

Construed in the light most favorable to Demarest, the allegations set forth in the Second Amended Complaint satisfy the lower similarity standard necessary for a *LeClair* Equal Protection claim. Notably, in *Hu*, this Court cautioned that "[t]o survive a motion to dismiss" a complaint "need not contain 'detailed factual allegations[.]'" 927 F.3d at 97 (quoting *Matson v. Bd. of Educ. Of City Sch. Dist. of New York*, 631 F.3d 57, 63 (2d Cir. 2011)). While Demarest must set forth factual allegations that "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) "*do not require heightened fact pleading of specifics*, but only enough facts to state a claim to relief that is plausible on its face." *Id.* (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 112 (2d Cir. 2010)). Accordingly, "[s]o long as a plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those acts is improbable, and that a recovery is very remote and unlikely." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

Here, Demarest has satisfied the plausibility standard by alleging different treatment by the same defendant (the Town) for the same conduct (submitting a preliminary subdivision application, requesting road maintenance, or submitting a Conflict of Interest Complaint) that all occurred in the same Town or on the same road (TH-26). Accordingly, this Court can and should infer that there is a reasonably close resemblance between Demarest and his comparators, particularly at this stage of the litigation.

Demarest should be entitled to pursue discovery to uncover the information needed to make more specific allegations to establish that the resemblance between him and his comparators is "reasonably close." In *Hu*, this Court noted that "[a]t this early stage in the litigation" a plaintiff's failure to plead "such fact-specific details should not bar [a] *LeClair* claim[]." 927 F.3d at 97. In fact, "the question of 'whether parties are similarly situated is [generally] a fact-intensive inquiry' that depends heavily on the particular context of the case at hand." *Id.* (quoting *Clubside,* 468 F.3d at 159). Moreover, "it is precisely in light of the inquiry's fact-intensive nature that [this Court has] cautioned against deciding whether two comparators are similarly situated on a motion to dismiss." *Id.* (citing *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) ("Ordinarily, whether two employees are similarly situated presents a question of fact, rather than a legal question to be resolved on a motion to dismiss." (internal quotation marks and alterations omitted)).

Moreover, as set forth above, Demarest's Second Amended Complaint sufficiently alleges that the Municipal Defendants and Town's selective treatment of Demarest was based on impermissible considerations, such as an intent to inhibit or punish the exercise of constitutional rights. *LeClair*, 627 F.2d at 609–10. As a result, this Court should reverse the District Court's decision and conclude that Demarest's *LeClair* Equal Protection claims are not futile because the Second Amended Complaint sets forth sufficiently plausible allegations that permit this Court to draw the reasonable inference that the Town and Municipal Defendants are liable for the misconduct alleged.

## **CONCLUSION**

For the reasons set forth above, the Court should reverse the District Court's Opinion and Judgment dismissing Demarest's claims as futile because Demarest's Second Amended Complaint sets forth sufficient factual allegations to state viable First Amendment Retaliation claims and viable *LeClair* Equal Protection claims against the Town and Municipal Defendants that are facially plausible.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B)(i) because this brief contains 7940 words (no more than 13,000), excluding items listed in Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  April 25, 2024          PRIMMER PIPER EGGLESTON & CRAMER PC

                                By:    /s/ *Jeremy S. Grant, Esq.*
                                       Jeremy S. Grant, Esq.

                                       *Counsel for Plaintiff Appellant*
                                       *David P. Demarest*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2024, I electronically filed the foregoing Brief of Plaintiff-Appellant David P. Demarest with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system, with paper copies to follow by mail.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  April 25, 2024

PRIMMER PIPER EGGLESTON & CRAMER PC

By:  /s/ *Jeremy S. Grant, Esq.*
Jeremy S. Grant, Esq.
30 Main Street, Suite 500
Burlington, VT 05401
(802) 864-0880
jgrant@primmer.com

*Counsel for Plaintiff Appellant*
*David P. Demarest*